**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRIENDS OF THE RIVER,<br><br>              Plaintiff,<br><br>     v.<br><br>UNITED STATES ARMY CORPS OF<br>ENGINEERS, *et al.*,<br><br>              Defendants. | Civil Action No. 16-2327 (JMC) |

## <u>MEMORANDUM OPINION</u>

Friends of the River (FOR) filed this lawsuit claiming that the Army Corps of Engineers failed to adequately respond to four FOIA requests, each of which are related to the Corps' operation and maintenance of two dams on the Yuba River and the impact of those dams on several fish species that are protected by the Endangered Species Act.[1] ECF 1 ¶ 1. After considerable litigation, only one substantive issue remains: whether the Corps has unlawfully withheld certain responsive materials under FOIA's Exemption 5. ECF 73 ¶¶ 32–41. The Parties have cross-moved for summary judgment on that issue. The Court concludes that the Corps has failed to adequately explain some—but not all—of its withholdings under Exemption 5. Specifically, the Court finds that the Corps has not carried its burden to justify most of its withholdings under the deliberative process privilege. At the same time, the Court concludes that the Corps properly withheld the records it declined to disclose pursuant to the attorney-client and work-product privileges.

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

Accordingly, the Court partially grants and partially denies the Corps' Motion for Summary Judgment, concluding that the Corps properly withheld the records it declined to disclose under the attorney-client and work-product privileges (as well as a few selected records that were withheld pursuant to the deliberative process privilege). Next, the Court partially grants and partially denies FOR's Cross-Motion, finding that the Corps has failed to articulate what foreseeable harm would result from the disclosure of most of the records it withheld under the deliberative process privilege. Accordingly, the Court orders the Corps to produce those materials.

## I.   BACKGROUND

The following facts are not in dispute. FOR originally sent the four FOIA requests at issue in the spring of 2016. ECF 74 ¶ 15. For the purposes of litigation, those requests are referred to as FOIA 1, FOIA 3, FOIA 4, and FOIA 5.[2] *Id*. FOIAs 1, 3, and 4 were submitted directly to the Corps. ECF 73 ¶ 15. FOIA 5 was initially submitted to the National Marine Fisheries Service, which subsequently referred to the Corps 1,064 documents containing information that originated with the Corps, so it could determine which records to release to FOR. *Id.* ¶¶ 15, 19.

The Corps consists of a Washington, D.C. headquarters and nine subordinate divisions located throughout the world. ECF 79-2 ¶ 3. Two of those divisions are involved in this case: the South Pacific Division (SPD) and the Northwest Division (NWD). *Id.* Those divisions, in turn, have subordinate districts. One of those districts is the Sacramento District (SPK), which is located within and reports to the SPD. *Id.* The SPD, NWD, and SPK have cumulatively produced thousands of pages of documents in response to FOR's requests. Each has also withheld materials pursuant to the litigation privileges encompassed by FOIA's Exemption 5, providing sworn

---

[2] FOIA 2, another request submitted to the Corps around the same time, is no longer at issue in this case. ECF 73 ¶ 15.

declarations and Vaughn indices[3] to explain and justify those withholdings. *See* ECF 79-3; ECF 79-4; ECF 79-5 (declarations). The Vaughn indices were submitted as follows: one spreadsheet from the NWD, ECF 83-3,[4] one spreadsheet from the SPK, ECF 83-16, and two spreadsheets from the SPD (labelled FOIA 1 and FOIA 3). The two SPD spreadsheets were further divided into four spreadsheets each: (1) materials withheld under the deliberative process privilege only, ECF 83-9; ECF 83-13; (2) materials withheld under both the attorney-client and work-product privileges, ECF 83-5; ECF 83-12; (3) materials withheld under both the attorney-client and deliberative process privileges, ECF 83-7; ECF 83-14; and (4) redacted materials, ECF 83-11; ECF 83-15. That means, in essence, that the Court is considering ten indices. The current iterations of those indices are the result of several previous rounds of revisions, undertaken partially in response to previous orders from this Court. In addition, the Court invited the Parties to submit supplemental briefing to address the D.C. Circuit's rearticulation of the foreseeable harm standard in *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). *See* Min. Order, March 31, 2021.

At this point in the litigation, FOR does not dispute that the Corps' search for records was adequate. ECF 73 ¶ 27. Rather, FOR challenges the sufficiency of the Corps' disclosures. *Id.* Specifically, FOR argues that the declarations and indices submitted by the SPD, NWD, and SPK fail to provide the information necessary to justify the Corps' withholdings under the following

---

[3] A Vaughn index is a standardized document "created by an agency to assist courts and FOIA requesters when the agency claims that responsive documents are exempt from disclosure." *Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 190 (D.C. Cir. 2007). The index is meant to "describe with reasonable specificity the material withheld" and justify why each responsive document is exempt from disclosure under FOIA. *King v. Dep't of Just.*, 830 F.2d 210, 221 (D.C. Cir. 1987). When creating a Vaughn index, "[a] withholding agency must describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information." *Id.* at 223–24 (emphasis omitted).

[4] In its Reply in support of its Cross-Motion for Summary Judgment, ECF 83, FOR submitted its own versions of the Corps' Vaughn indices, unaltered but for (1) the deletion of entries for documents that were released, and (2) the addition of an extra column that included commentary by FOR. *See* ECF 83-1 ¶¶ 2–3 (explaining this). The Court cites only to those Vaughn indices here to avoid the extra confusion of citing to both Parties' versions.

three privileges: the deliberative process privilege, the attorney-client privilege, and the work-product privilege. ECF 83 at 5. The matter is before the Court on the Parties' cross-motions for summary judgment on that issue. ECF 79; ECF 80.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

FOIA cases are typically decided at summary judgment. *See Laverpool v. Dep't of Hous. & Urb. Dev.*, 315 F. Supp. 3d 388, 390 (D.D.C. 2018). A court will grant a summary judgment motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). To satisfy that burden, the "agency must prove that each document that falls within the class requested either has been produced, is unidentifiable[,] or is wholly exempt from the Act's inspection requirements." *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). A court may accept as true any uncontested factual assertions in the moving party's affidavits or attachments, provided that  the nonmoving party has "fair notice of the requirements of the summary judgment rule" and the "consequences of failing to respond" to a summary judgment motion, as well as a "reasonable opportunity to submit" their own evidence in response. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). "When parties file cross-motions for summary judgment, each motion is viewed separately, in the light most favorable to the non-moving party, with the court determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 267 F. Supp. 3d 229, 236 (D.D.C. 2017).

4

### B.  Adequate Disclosure

Although "FOIA calls for broad disclosure of Government records," an agency may withhold responsive materials under any one of the nine exemptions defined in 5 U.S.C. § 552(b). *Porup v. CIA*, 997 F.3d 1224, 1235 (D.C. Cir. 2021). To do so, an agency must demonstrate *both* (1) "that the record falls within a FOIA exemption," and (2) "that the agency reasonably foresees that disclosure would harm an interest protected by the exemption." *Machado Amadis*, 971 F.3d at 370. An agency can show that a FOIA exemption applies by submitting affidavits that (1) describe the justifications for nondisclosure with reasonably specific detail, (2) demonstrate that the information withheld logically falls within the claimed exemption, and (3) are not contradicted by the record or by evidence of bad faith. *Citizens for Resp. & Ethics in Washington v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). If it chooses, an agency may also supplement such an affidavit with a "Vaughn index,"[5] which allows the agency to provide more granular descriptions of the withheld material without exposing the information itself. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). The Court affords the sworn representation of the agency a presumption of good faith, "which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Even if some information in a responsive record is exempt from disclosure, any "reasonably segregable information" must be disclosed following redaction of the information that is exempt. 5 U.S.C. § 552(b). Non-exempt information is not reasonably segregable if it is "inextricably intertwined with [the] exempt portions" of a document. *Johnson v. Exec. Off. for*

---

[5] *See supra* note 3.

*U.S. Att'ys*, 310 F. 3d 771, 776 (D.C. Cir. 2002). To show that it has released all reasonably segregable information, an agency may rely on a combination of its declarations and Vaughn indices. *See id.* Agencies are entitled to a presumption that they have disclosed all reasonably segregable material. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). To rebut that presumption, a plaintiff must produce some "quantum of evidence" that reasonably segregable information has been withheld. *Id.*

## III.   ANALYSIS

As an initial matter, the Court dismisses FOR's claims against Lieutenant General Todd T. Semonite, who is sued in his official capacity as Commanding General of the Army Corps of Engineers. *See* ECF 73 ¶ 10. The agency—not an individual employee of the agency—is the proper Defendant in a FOIA action. *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006); *see also Santini v. Taylor*, 555 F. Supp. 2d 181, 184 (D.D.C. 2008) ("[T]his Court lacks jurisdiction to hear FOIA claims against individuals, even where such individuals are agency heads or other agency officials named in their official capacity."). FOR cites to no authority in support of its suggestion—made at an earlier point in this litigation—that the FOIA Improvement Act of 2016 did anything to alter that basic rule. *See* ECF 41 at 13.

Moving on to the substance of FOR's claims, the Court concludes that the Corps has failed to justify some—but not all—of its withholdings under FOIA's Exemption 5. The Court finds that the Corps did not carry its burden to justify most of its withholdings under the deliberative process privilege. That is because the Corps has not articulated any concrete, foreseeable harm that would result from the disclosure of those records. In contrast, the Court finds that the Corps has adequately justified its withholdings under the attorney-client and work-product privileges.

### A.  Legal Framework

FOIA's Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). That exemption encompasses each of the evidentiary privileges that would protect the same materials in litigation. *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). Those privileges include, among others, the deliberative process privilege, the attorney-client privilege, and the work-product privilege. *Id*. To establish that a record has been properly withheld under Exemption 5, an agency must show that (1) at least one of those privileges applies to the materials in question, and (2) "it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege." *Reps. Comm. for Freedom of the Press v. FBI (Reporters Comm. I)*, 3 F.4th 350, 361 (D.C. Cir. 2021). The foreseeable harm requirement is neither a makeweight requirement nor a formality; the D.C. Circuit has made it clear that it "imposes an independent and meaningful burden" on an agency to justify its withholdings. *Id.* at 369.

### 1.  *The deliberative process privilege*

The purpose of the deliberative process privilege is to facilitate agency decisionmaking by "protect[ing] debate and candid consideration of alternatives within an agency." *Machado Amadis*, 971 F.3d at 371. To be protected by the deliberative process privilege, "a document must be [both] predecisional and deliberative." *Id.* at 370. A document is predecisional if it is "generated before the adoption of an agency policy," and deliberative if it "reflect[s] the give-and-take of the consultative process" leading up to that decision. *Id.* "[B]ecause the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process," an agency must describe with particularity why a document is protected by the privilege. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980); *see also Elec. Frontier*

*Found. v. Dep't of Just.*, 826 F. Supp. 2d 157, 167–68 (D.D.C. 2011). Thus, for the deliberative process privilege to apply, an agency must explain: "(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 189 (D.D.C. 2013) (citing *Senate of P.R. v. Dep't of Just.*, 823 F.2d 574, 585–86 (D.C. Cir. 1987)).

Once it has shown that the deliberative process privilege applies to a withheld record, the agency must also satisfy the foreseeable harm requirement. What is more, the foreseeable harm requirement applies with particular force in the context of the deliberative process privilege. It is not enough for an agency to provide "[a] perfunctory statement that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information." *Reporters Comm. I*, 3 F.4th at 370. Rather, the agency must provide "a focused and concrete" explanation of "why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* There are two provisos to that rule. First, an agency need not provide a separate explanation for each individual record; it may take a "categorical approach," so long as the categories it defines are specific enough so that the explanation provided would "characteristically" apply to each document therein. *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 78–79 (D.D.C. 2018); *see also Reporters Comm. I*, 3 F.4th at 369. Second, in the absence of a focused and concrete agency explanation, the Court may nonetheless find that the foreseeable harm requirement is satisfied based on the "context and purpose" of the withheld information. *Reporters Comm. I*, 3 F.4th at 372; *see also Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot. (Reporters Comm. II)*, 567 F. Supp. 3d 97, 110 (D.D.C. 2021).

2.   *The attorney-client privilege*

The attorney-client privilege "protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services," *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998), including "communications between government attorneys and client agencies or departments," *id.* at 1269. The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "is not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Coastal States*, 617 F.2d at 862. The privilege does not protect communications in which an "attorney conveys to his client facts acquired from other persons or sources." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). Nor does it protect the facts themselves, which might be contained in a privileged communication but are discoverable by other means. *Upjohn*, 449 U.S. at 395–96. Finally, it bears repeating that the privilege applies only to confidential communications; if an otherwise-protected communication is subsequently disclosed to a third party—even inadvertently—the privilege is waived not only as to that specific communication, but also as "to all other communications relating to the same subject matter." *In re Sealed Case*, 877 F.2d 976, 980–81 (D.C. Cir. 1989).

3.   *The work-product privilege*

The work-product privilege applies to any document that "can fairly be said to have been prepared or obtained" by an attorney "because of the prospect of litigation." *Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just.*, 844 F.3d 246, 251 (D.C. Cir. 2016). The work-product privilege serves to protect "the integrity of the adversary trial process itself . . . by providing a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate

9

a client's case, and prepare legal theories." *Id.* For the work-product privilege to apply, a document must (a) have been prepared or obtained by an attorney, (b) in anticipation of litigation that (c) the attorney had the objectively reasonable belief was a real possibility. *Id.* There is no requirement that the anticipated litigation actually materializes. *Frank LLP v. Consumer Fin. Prot. Bureau*, 288 F. Supp. 3d 46, 54 (D.D.C. 2017) (citing *FTC v. Grolier Inc.*, 462 U.S. 19, 28 (1983)). The work-product privilege protects not only factual materials prepared in anticipation of litigation, but also an attorney's "mental impressions, conclusions, opinions, or legal theories." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).

Although the D.C. Circuit has expounded upon the relationship between the foreseeable harm requirement and the deliberative process privilege, the relationship between foreseeable harm and the attorney-client and work-product privileges remains largely undefined. To be sure, the statute is clear that the foreseeable harm requirement applies to all the Exemption 5 privileges. *See Reporters Comm. II*, 567 F. Supp. 3d 97, 120. That said, another court in this jurisdiction— focusing largely on the "prominent and sacrosanct" nature of the attorney-client relationship—has suggested that, in the case of the attorney-client and/or work-product privileges, "for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated," an agency may not need to provide as much information to satisfy the foreseeable harm requirement. *Id.* The Court agrees. Although FOIA requires that an agency provide a "non-generalized explanation of the foreseeable harm that would result from disclosure" of materials protected by the attorney-client and/or work-product privileges, establishing that one or both of those privileges apply "will go a long way" towards satisfying that burden. *Id.* at 124.

## B.  FOR's arguments

FOR makes three arguments that the Corps' withholdings were improper. Its primary argument is that the Corps has failed to offer focused and concrete explanations of the foreseeable

harm that would result from disclosure of the withheld documents. ECF 80 at 12–15. In FOR's view, the Court need look no further; the Corps' failure to articulate foreseeable harm requires the Court to grant summary judgment in favor of FOR and order the disclosure of the affected records. *Id.* Nonetheless, FOR goes on to argue that the Corps has—in many cases, at least—failed to establish that any of the Exemption 5 privileges apply to the records in the first place. *Id.* at 15–22. FOR also contends that the Corps has not established that the withheld records do not contain "reasonably segregable" material that must be disclosed under FOIA. *Id.* at 22–23.

The Court agrees with FOR that the Corps has failed to justify most of its deliberative process withholdings because it has not satisfied FOIA's foreseeable harm requirement for those records. The Court therefore orders the Corps, with limited exceptions described below, to produce those documents. In contrast, however, the Court finds that the Corps' withholdings under the attorney-client and work-product privileges were proper. The Corps has established that those privileges apply to the withheld records, that foreseeable harm would result from their disclosure, and that the records do not contain any reasonably segregable non-exempt materials.

> 1. *The Corps has failed to justify most of its deliberative process withholdings because it has not satisfied FOIA's foreseeable harm requirement.*

Of the 1,384 documents the Corps withheld in full, 758 were withheld solely under the deliberative process privilege. ECF 80-4 ¶ 11. FOR argues that the agency has articulated no concrete, foreseeable harm that would result from the disclosure of the documents. It asks the Court to order the immediate release of those records, together with any other information that the Corps withheld under the deliberative process privilege. The Court agrees with FOR and therefore orders the Corps to disclose nearly all the records withheld under that privilege.

The Corps purports to address the foreseeable harm requirement in both its Vaughn indices and the accompanying declarations. *See* ECF 87 (responding to the Court's request for

supplemental briefing on the foreseeable harm requirement). However, the Corps' Vaughn indices make almost no effort to articulate what harms would result from the disclosure of the withheld records. *See* ECF 80-4 ¶ 8. The majority of the entries in the Corps' indices that deal with the deliberative process privilege make no mention of foreseeable harm. *See generally* ECF 83-3; ECF 83-7; ECF 83-9; ECF 83-11; ECF 83-13; ECF 83-14; ECF 83-15; ECF 83-16. Moreover, the entries that do purport to describe a foreseeable harm mostly do so only in broad, non-specific language. *See, e.g.*, ECF 83-9 at 10, ln. 17 ("This material cannot be released without interfering in the agency's interest in encouraging frank discussion."). That kind of "cookie-cutter" language does nothing to articulate "[a] link between the specified harm and the specific information contained in the material withheld," and is therefore insufficient. *Reporters Comm. I*, 3 F.4th at 371. Finally, although it is true that the Court may consider the context and content of the information at issue in order to find that the foreseeable harm requirement has been satisfied, *see id.* at 372, there is nothing in the Corps' Vaughn indices to suggest the kind of sensitivity or stakes that would lead the Court to conclude that the release of the relevant records would harm the interests the deliberative process privilege was intended to protect. *Cf. id.* at 372 (discussing "the unique sensitivity of discussions among . . . high-ranking FBI officials about how to respond to an ongoing crisis that threatened existing covert Bureau operational tactics").

Perhaps recognizing that its Vaughn indices are deficient, the Corps' arguments rely heavily on the "generalized explanation[s]" contained in the three declarations it submitted with its Motion for Summary Judgment. ECF 81 at 12. All three of the Corps' declarations include a functionally identical, boilerplate explanation of the harms that would result from the disclosure of the agency's deliberative process withholdings:

> Based on my review, I found that the communications/emails identified as protected by the deliberative process privilege are candid interagency

> communications that were not intended by the author to be released to third parties. These communications would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is yet only a personal opinion. Disclosure of these communications would undermine the confidence of agency officials in their ability to use email as a method to engage in these types of interagency communications.

ECF 79-3 ¶ 3; 79-5 ¶ 3 (internal citation omitted); *see also* 79-4 ¶ 4 (same, but with minor differences in wording). Each declaration further states that disclosure would likely "stifle honest and frank communication within the agency." ECF 79-3 ¶ 6; ECF 79-4 ¶ 7; ECF 79-5 ¶ 6. There are no explanations provided beyond those statements, which are, if anything, even more "boilerplate, unparticularized, and hypothesized" than the explanations the D.C. Circuit found insufficient in *Reporters Committee I. See* 3 F.4th at 370.[6] In other words, the statements in the Corps' declarations offer nothing more than a restatement of the privilege's general purpose, with no effort to link that purpose to "the information at issue."[7] *Machado Amadis*, 971 F.3d at 371. As for the fact that the declarations suggest that the release of agency emails, as a category, would undermine the confidence of agency officials in their ability to use email, the Court finds that the category of "all emails" is too broad to satisfy the categorical approach to the foreseeable harm requirement. *See Rosenberg*, 342 F. Supp. 3d at 78–79. The Court therefore concludes that the

---

[6] In that case, the agency's declaration stated that disclosure would "have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision." *Reporters Comm. I*, 3 F.4th at 370. The declaration went on to state that "[i]f agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision." *Id.*

[7] To be clear, the Court does not necessarily fault the Corps for "parrot[ing]" the language of the statute or of previous decisions. *Jud. Watch*, 449 F.3d at 147. Indeed, an agency may sometimes find it useful to employ such language, so long as it provides enough explanation to "link[] the [] language to the withheld documents." *Id.* The Court merely finds that the spare, generalized language used by the Corps here is insufficient to satisfy that requirement.

Corps has failed to satisfy the foreseeable harm requirement as to nearly all the materials it withheld under the deliberative process privilege.

That said, the Court does not find that the Corps has failed to satisfy the foreseeable harm standard for all its deliberative process withholdings. The Court has reviewed the agency's Vaughn indices line-by-line and identified the following records for which the Corps did provide a sufficiently particularized description of foreseeable harm to satisfy the requirements of FOIA. Specifically, the Corps has identified several pre-decisional records that differ from the final analysis adopted from the agency, the release of which has the potential to cause "public confusion." *See, e.g.*, ECF 83-9 at 7, ln. 10 (explaining that disclosure of an early draft of a press release, circulated inside the agency for comment and correction, would cause "public confusion resulting from disclosure of analysis that was not ultimately adopted by the agency"). Those records are the following: SPDF01000095, SPDF01000096, SPDF01087483–7484, SPDF01098644–8646, SPDF01108669–8859, SPDF01108860–8862, SPDF01112798–2812, SPDF01113024–3031, SPDF03001614–1619, SPDF03005625–5709, SPDF03006282–6310, SPDF03007414–7415, SPDF03007586–7615, SPDF03009080–9082, SPDF03009443, SPDF03009444, and R_SPDF01000001–0008. This is a close issue, and the Court does not suggest that a broad declaration that the release of records could lead to public confusion would be adequate in every case. However, for each of the records listed above, the Court finds the agency has done enough to link its explanation of harm to those specific records.

As for all other materials that the Corps has withheld pursuant solely to the deliberative process privilege, the Court orders that the Corps must disclose those materials to FOR.[8]

---

[8] The Court recognizes that many records were withheld under multiple privileges. To the extent that records are protected in full by the attorney-client and/or work-product privilege, the agency need not disclose those documents, even if it also asserted that the records were protected by the deliberative process privilege. To the extent that different

2. *The Corps properly withheld the records it declined to disclose pursuant to the attorney-client and work-product privileges.*

Regarding the attorney-client and work-product privileges, the Court makes the following findings. First, the Court concludes that the Corps has adequately explained why those privileges apply to the withheld records. Second, the Court determines that the agency has adequately articulated the harm that would result from disclosure of those records. Finally, the Court finds that the agency has shown that it released all reasonably segregable information from the affected records. Accordingly, the Court grants the Corps' Motion for Summary Judgment as to all materials withheld under the attorney-client and work-product privileges.

FOR makes several arguments that the Corps has failed to establish that the attorney-client and/or work-product privileges apply to the withheld materials. First, FOR argues that the blanket statements made in the Corps' declarations—averring across-the-board that the communications that were withheld under the attorney-client privilege were never shared with third parties—are insufficient to establish that each communication was confidential, particularly in light of the fact that the Vaughn indices do not identify specific authors for many of the withheld records. ECF 80 at 21. FOR also contends that the Corps' indices do not establish that those communications were made for the purpose of obtaining legal advice. *Id.* Finally, FOR argues that the Corps' work-product withholdings are not justified because the agency has failed to identify the specific, anticipated litigation for which the materials were prepared and/or obtained. *Id.* at 22. The Court is unpersuaded by any of those arguments.

---

portions of the records are protected by different privileges, the agency must segregate the information and disclose any materials that are not protected by the attorney-client or work-product privileges.

As an initial matter, FOR has submitted nothing to rebut the declarations' statements that the communications that were withheld under the attorney-client privilege were confidential because they were not shared with third parties. ECF 79-3 ¶ 7; ECF 79-4 ¶ 8; ECF 79-5 ¶ 7. FOR offers no evidence that any of the records at issue were ever shared with individuals outside the agency.[9] *See* ECF 80 at 20–22. Nor is the agency necessarily required to name the author of each document to successfully assert the attorney-client privilege, particularly given that the declarations and indices repeatedly state that the communications were between an attorney and their client (with the implication that the non-attorney parties to the communication were agency personnel). *Cf. Reporters Comm. II*, F. Supp. 3d at 117–18 (upholding an agency's assertion of the attorney-client privilege despite redacted author names). Finally, the fact that some of the communications appear to incorporate some non-confidential information does not change that fact that the communications themselves are privileged.[10]

As for FOR's second argument—that the Corps has not established that the communications were for the purpose of obtaining legal advice—the Vaughn indices consistently show that the communications at issue involved legal questions. *See, e.g.*, ECF 83-3 at 10, ln. 42 ("This email chain consists of a message from an NWP employee to an NWP attorney asking a

---

[9] FOR speculates that the fact that the Corps partnered with an outside entity to develop the Yuba River Ecosystem Restoration feasibility study suggests that documents related to that study were circulated outside the agency, and thus are not protected by the attorney-client privilege. ECF 83 at 19. Such speculation is insufficient to rebut the presumed accuracy of the agency's declarations that the communications were confidential. *See SafeCard Servs.*, 926 F.2d at 1200.

[10] The primary records FOR challenges on that ground are those involving the "Stockdale memo," a document that contains legal guidance that was "distributed widely both within and outside the agency." ECF 80 at 21–22. FOR contends that, because the Stockdale memo itself was not confidential, legal advice about how it applies to other Corps projects is not protected by the attorney-client privilege. *Id.* That argument misapprehends the contours of the privilege. FOR is correct that the Stockdale memo itself is not protected. However, the communications at issue here, in which Corps attorneys analyze how the memo applies to future other projects, are legal advice and are therefore privileged.

question regarding a legal question related to the Stockdale memo and the manner in which the Stockdale memo was written. The other email is the attorney's response to the employee's question."); ECF 83-12 at 4, ln. 12 ("This document . . . constitutes discussion among attorneys and clients including provisional legal analysis of biological assessment issues."); ECF 83-16 at 2, ln. 14 ("E-mail chain in which USACE employee forwards information to SPK attorney . . . in order to receive legal advice regarding fish ladders."). Moreover, two of the agency's declarations describe long-term, ongoing litigation involving the subject matter of these FOIA requests—some of which involves FOR itself as plaintiff. *See* ECF 79-4 ¶ 6; ECF 79-5 ¶ 5. That context, which suggests that the agency reasonably anticipated additional litigation on the subject, supports the Corps' assertion that the relevant communications were for the purpose of obtaining legal advice. *See Nat'l Ass'n of Crim. Def. Laws.*, 844 F.3d at 250. Thus, the statements in the Corps' declarations, together with the presumption of good faith that the Court affords such declarations, *see SafeCard Servs.*, 926 F.2d at 1200, are sufficient to establish that the withheld material is privileged.

Next, the Court finds the Corps has met its burden to articulate the harms that would result from disclosure of its attorney-client and work-product withholdings. As was the case with the Corps' deliberative process withholdings, the Corps' Vaughn indices do not include specific explanations of the foreseeable harm associated with each record. However, here the Court finds that the statements of foreseeable harm that are included in the Corps' declarations—considered in context—are sufficient to satisfy that requirement. Regarding attorney-client privilege, each of the Corps' three declarations states:

> If the documents protected by the attorney-client privilege are released, such release would foreseeably harm the attorney-client privilege by disclosure "either directly or by implication, of information which a client has previously confided to the attorney's trust."

17

ECF 79-3 ¶ 4 (quoting *Coastal States*, 617 F.2d at 862); ECF 79-4 ¶ 5 (same); ECF 79-5 ¶ 4 (same). The latter two declarations also explain that, within the Corps, "email is a regular method of seeking and obtaining legal advice," and that "[t]he ability to seek and obtain candid legal advice via email would be harmed by the release" of such emails. ECF 79-4 ¶ 5; ECF 79-5 ¶ 4. Those same declarations further explain that Corps attorneys "frequently provide legal advice in the form of comments on draft documents," and that "[t]he ability to seek and obtain candid legal advice via the review of and comment on draft documents would be harmed by the release" of such records. ECF 79-4 ¶ 5; ECF 79-5 ¶ 4. Taken together, the above statements are more concrete than those that passed muster in *Reporters Committee II*,[11] at least regarding any records that consist of either emails or annotated draft documents. *See* 567 F. Supp. 3d at 120. Moreover, the declarations' descriptions of ongoing and anticipated litigation involving not only the same subject matter that is at issue in these requests, but potentially the same litigants, *see* ECF 79-4 ¶ 6; ECF 79-5 ¶ 5, establishes an even more concrete harm—that the very records FOR is requesting here would be at issue (and therefore privileged) in actual litigation against FOR. Disclosure in this case would result in waiver of that privilege. *See In re Sealed Case*, 877 F.2d at 980–81.

Regarding the work-product privilege, the Corps' declarations each explain that "it would foreseeably harm the integrity of the adversarial system should adversaries be entitled to probe each other's thoughts and plans concerning a case in litigation or litigation that is fairly foreseeable." ECF 79-3 ¶ 5; ECF 79-4 ¶ 6; ECF 79-5 ¶ 5. In addition to that generalized statement,

---

[11] In that case, the Court found that the following language was sufficient: "Routine disclosure of information protected by attorney-client and/or attorney work product privilege would shake the very foundation of the legal profession, as clients would not feel comfortable asking for advice and attorneys would not feel comfortable providing it." *Reporters Comm. II*, 567 F. Supp. 3d at 120.

the Court is permitted to consider the context that Corps also provides in its submissions. *See Reporters Comm. I*, 3 F.4th at 372. It is not sufficient for the Corps to assert that, because it faces frequent litigation of its decisions, all materials prepared by its attorneys are protected by the work-product privilege. However, in this case, FOR faces the prospect of actual litigation involving the same subject matter against the same Plaintiff. That strongly suggests that the Corps' being ordered to disclose materials it withheld under the work-product privilege would force the agency to divulge *to* FOR (and to the public) its preparation for anticipated litigation *with* FOR. That is sufficient for the Court to conclude that disclosure of the withheld records would harm the interests the work-product privilege was intended to protect.

Finally, the Court finds that the Corps has met its burden to establish that it released all reasonably segregable information from the affected records. Each of the Corps' declarations includes a statement that the declarant personally conducted a document-by-document review of the withheld materials to search for segregable material, and that any such material was "inextricably intertwined with exempt information" such that disclosure would be impossible. ECF 79-3 ¶ 9; ECF 79-4 ¶ 10; ECF 79-5 ¶ 9. To overcome the presumption that the agency has disclosed all segregable material, a plaintiff must offer some "quantum of evidence" to the contrary. *Sussman*, 494 F.3d at 1117. FOR has offered no such evidence to rebut the agency's declarations that all reasonably segregable information was released. *See* ECF 80 at 22–23.

Accordingly, the Court concludes that the materials withheld by the Corps under the attorney-client and work-product privileges were appropriately withheld. Therefore, the Court grants the agency's Motion for Summary Judgment regarding those materials.

## IV.    CONCLUSION

First, the Court orders that all claims against Lieutenant General Todd T. Semonite, in his official capacity, are DISMISSED for lack of subject matter jurisdiction.

Next, the Court PARTIALLY GRANTS and PARTIALLY DENIES Defendant's Motion for Summary Judgment. ECF 79. The Court grants the motion as to all materials that were withheld under the attorney-client and/or work-product privileges, and as to some materials that were withheld under the deliberative process privilege due to their potential to cause "public confusion." However, the Court denies Defendant's motion as to all other withheld materials.

Finally, the Court PARTIALLY GRANTS and PARTIALLY DENIES Plaintiff's Cross-Motion for Summary Judgment. ECF 80. The Court orders Defendant to release all responsive materials that were withheld solely pursuant to the deliberative process privilege, with the exception of those few records that Defendant has explained contain pre-decisional analysis that was not adopted by the agency, and which would therefore cause "public confusion" if released.

A separate order accompanies this opinion.

**SO ORDERED.**

DATE: June 21, 2023

_____
Jia M. Cobb
U.S. District Court Judge